The Metropolitan Elevated Railway Company, Appellant, *v.* Sylvester H. Kneeland et al., Respondents.

In an action against the directors of a corporation for fraudulently issuing in its name and negotiating promissory notes, purporting to be valid obligations of the corporation, which have been transferred to *bona fide* holders for value, it is not necessary to allege in the complaint or to prove that the corporation has paid them; it is sufficient to aver that it is legally liable to pay. A cause of action accrues to the corporation as soon as it becomes liable upon the note through the transfer thereof, and

neither the right of action nor the measure of damages depends upon the fact of payment.

A person who fraudulently places in circulation the negotiable paper of another, whether made by him or by his apparent authority, and thereby renders him liable to pay the same to a *bona fide* purchaser, is guilty of a tort, and, in the absence of special circumstances diminishing its value, is presumptively liable to the injured party for the face value of the paper.

(Argued February 27, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 24, 1887, which affirmed a judgment in favor of defendants entered upon an order sustaining a demurrer to the complaint herein.

Aside from certain facts alleged by way of inducement, the substantial allegations of the complaint herein are that from the 8th of November, 1882, until in August, 1884, the defendant Kneeland was a stockholder, director and the president of the plaintiff, a railroad corporation, organized under the laws of this state; that as president he was not called upon to perform any duties connected with the active management or operation of the road, and there was no salary attached to his office by any resolution or action, either of the stockholders or directors; that his predecessors in office had never received any salary, and that the plaintiff never agreed to pay him a salary as its president, or to pay him for his services; that on the 5th of June, 1884, all of the defendants were directors of the plaintiff, and, with the exception of Mr. Gillett, attended a directors' meeting, at which the following resolution was unanimously adopted, viz.: "Resolved, that S. H. Kneeland, the president of this company, shall be paid a salary of $25,000 per annum from the time of his election as such;" that on the eighteenth of the same month at another meeting of the directors, all of the defendants being present except Duggin and Slayback, it was unanimously resolved "that the president be and he is authorized to use the credit of the company by issuing and negotiating its notes, or otherwise, for paying

the salary of the said president, said notes to be signed by the president and countersigned by the treasurer in the usual way and form, and not to exceed the limit of the amount heretofore authorized;" that prior to the adoption of the latter resolution, as well as subsequently, notes officially signed and countersigned by the president and treasurer, respectively, were issued to the amount, in the aggregate, of $43,950, and are now due and unpaid; that said notes were retained by said Kneeland and applied to his own use, and while some of them are held by certain of the defendants, others were negotiated before maturity and passed into the hands of *bona fide* purchasers for value without notice; that payment of some of said notes has been demanded of the plaintiff and suits threatened thereon, and actions have actually been brought against it upon two thereof; that said Kneeland was never entitled to demand or receive from the plaintiff any salary or compensation for services as such president, and that the company was under no liability to him either for salary or compensation, as the defendants knew, or were bound to know as directors, and that their action in voting to pay him a salary and in directing the issue of notes for that purpose was illegal, a breach of trust and a violation of their duty as directors; that said notes are invalid in the hands of all persons except *bana fide* purchasers, without notice, before maturity and for a valuable and sufficient consideration; that the aforesaid action of the defendants was a fraud upon the plaintiff, and that in consequence thereof it has incurred a liability to pay such of said notes as have come into the hands of *bona fide* purchasers, without notice, for a good consideration and before maturity; that some of said notes were "paid over by the said Kneeland to some of the defendants in payment of or to secure the payment" of precedent indebtedness of said Kneeland to such defendants, and that they are still under the control "of the defendants or some of them," and have not passed into the hands of *bona fide* purchasers.

The relief demanded is that "an account be taken of said notes, and that it be ascertained and determined which of

said notes came into the hands of *bona fide* purchasers * * *
and that this plaintiff have judgment against these defendants
for $43,950 with interest from · June 5, 1884, or for such a
sum as plaintiff is liable to pay to the holders of said notes."
There is also a prayer for general relief.

The defendants demurred to the complaint, Slayback, Dug-
gin and Kneeland, separately, upon the ground that it does not
state facts sufficient to constitute a cause of action; that two
causes of action are improperly united, and that there is a
defect of parties, both plaintiff and defendant.

Upon the trial an interlocutory judgment was entered sus-
taining the demurrer as to all of the defendants, with leave to
amend in twenty days, but directing that the complaint should
be dismissed unless the plaintiff should amend the same during
said period.   Upon the expiration of twenty days, the plaintiff
having omitted to amend, final judgment was entered dismiss-
ing the complaint with costs.

*Edward S. Rapallo* for appellant.  The defendants, as
directors, had no authority to pay to Kneeland, out of the
company's property, compensation as president, nor a salary
for past services as president.  (Laws of 1872, chap. 885 ;
Laws of 1850, chap. 140 ; Laws of 1873, chap. 837 ; Laws of
1874, chap. 275 ; Laws of 1875, chap. 606 ; *People* v. *Bd. of
Assrs.*, 1 Hill, 620 ; *Bank of U. S.* v. *Dandridge*, 12 Wheat.
78 ; *People* v. *Waddell*, 18 Hun, 432 ; *Kelsey* v. *Sargent*, 40
id. 155 ; *M. F. G. R. Co.* v. *Branegan*, 40 Ind. 361 ; *Holder*
v. *L. B. & M. R. Co.*, 71 Ill. 106 ; *Jackson* v. *N. Y. C. R.
R. Co.*, 2 T. & C. 653 ; Pierce on Railroads, 31 ; Morawitz
on Corp. §§ 510–514 ; *Butts* v. *Wood*, 37 N. Y. 317 ; *Railway
Co.* v. *Allerton*, 18 Wall. 232 ; *Coleman* v. *S. A. R. R. Co.*,
38 N. Y. ·201 ; *Ogden* v. *Murray*, 39 id. 202 ; *Smith* v. *L. I.
Co.*, 102 id. 190 ; *Bailey* v. *C., etc., R. Co.*, 14 Hun, 483 ; *L.
Assn.* v. *Stonemetz*, 24 Penn. 534; *Kilpatrick* v. *P. F. B.
Co.*, 49 id. 118 ; *Cheney* v. *L., etc., R. R. Co.*, 68 Ill. 570 ;
*Holder* v. *L., etc. R. R. Co.*, 71 id. 106 ; *I. L. Co.* v. *Hough*,
91 id. 63 ; *Sawyer* v. *P. Bank*, 88 Mass. 209 ; *C. M. Bank*

v. *Elliott* 55 Ia. 104; *Bennett* v. *S. L., etc., Co.,* 19 Mo. App. 349; *N. W. R. Co.* v. *Jackson,* 19 Wkly. Dig. 198.) The defendants, as agents of the corporation, and trustees of the funds of the stockholders, committed a constructively fraudulent act in appropriating trust property to the use of one of their number without consideration. Their action constituted a tort and rendered them liable to the corporation and stock. holders for all resulting damage. (*Butts* v. *Wood,* 37 N. Y. 319; *Comstock* v. *Comstock,* 57 Barb. 469; *Coleman* v. *S. A. R. R. Co.,* 38 N. Y. 201; *Wardell* v. *R. R. Co.,* 4 Dill. 330; *A. R. Co.* v. *Blakie,* 1 McQ. 462; *M. R. Co.* v. *M. R. Co.,* 14 Abb. [N. C.] 103.) The complaint contains allegations of fact from which it appears that the illegal and fraudulent transaction of the directors has directly resulted in damage to plaintiff; the facts stated constitute a complete cause of action for the recovery of damages at law for fraud. (*Butts* v. *Wood,* 37 N. Y. 319; *Farnham* v. *Benedict,* 107 id. 159; *B. R. R. Co.* v. *Strong,* 75 id. 591; *Pasley* v. *Freeman,* 3 T. R. 51; *Thayer* v. *Manley,* 73 N. Y. 305; *Decker* v. *Mathews,* 12 id. 313; *Betz* v. *Daly,* 3 N. Y. S. R. 309.) The allegations of the complaint are sufficient, and no irregularity in its form. can be found such as to justify the sustaining of the demurrer. (Code, § 481; *Barney* v. *Drexel,* 33 Hun, 37; *Hemingway* v. *Poucher,* 98 N. Y. 287; *Wright* v. *Hooker,* 10 id. 59; *S. O. Co.* v. *Schofield,* 16 Abb. [N. C.] 380; *Zabriskie* v. *Smith,* 13 N. Y. 330; *Marie* v. *Garrison,* 83 id. 22; *Hall* v. *Hall,* 38 How. Pr. 97; *Williams* v. *Slote,* 70 N. Y. 601; *Stevens* v. *Mayor, etc.,* 84 id. 305; *Heywood* v. *City of Buffalo,* 14 id. 540; Moak's Van Santvoord's Pl. [3d ed.] 755–776.)

*Francis C. Barlow* for respondents. When an indemnity is given against " a claim, charge or liability," or when a covenant is that the covenantor shall do, or not do, a particular thing, then the indemnitee or covenantee can recover without having paid anything. (*Gilbert* v. *Wiman,* 1 N. Y. 550, 562, 563; *Kohler* v. *Matlage,* 72 id. 267; *Bank* v. *Bigler,* 83 id. 61, 62; *Belloni* v. *Freeborn,* 63 id. 390.) In actions

for negligence or misconduct by an agent, no cause of action accrues until actual damage has been sustained, and the right to "nominal damages" does not give a cause of action. ( *Williams* v. *Mostyn*, 4 M. & W. 144; *Planck* v. *Anderson*, 5 T. R. 45; *Randell* v. *Whele*, 10 Ad. & El. 728, 729; *Hobson* v. *Thelluson*, L. R. [2 L. B.] 642; *Stinson* v. *Farnham*, 7 id. 175, 178, 180, 182; *Bank* v. *Ten Eyck*, 48 id. 305; *Knapp* v. *Roche*, 94 id. 333.) The allegations of the complaint plainly imported an action on the case for misconduct, and if there is any doubt, the rule applies that where a pleading is ambiguous, the pleader must be bound by the interpretation of it, which the other party has acted on. (*E. Ins. Co.* v. *Cuyler*, 75 N. Y. 514, 515.) It cannot be successfully claimed that an allegation that an agent, corporation or otherwise, made (or authorized) a note in the name of his principal, without authority or consideration, or fraudulently, is a conversion of the note. (2 Selwyn's Nisi Prius [7th Am. ed.] 1353; *Malcolm* v. *O'Reily*, 15 J. & S. 222, 224; *Dodds* v. *Johnson*, 3 T. & C. 217.) Innocence and right doing are always presumed, and in actions for a fraud, especially, the incriminating facts must be alleged and proved. (1 Phil. on Ev. [5th Am. ed.] 500, 501.) Even if it could be held that nominal damages could be recovered, it is submitted that there could not be such a recovery as should lead to an overruling of the demurrer. (*Gilbert* v. *Wiman*, 1 N. Y. 564.)

*Nelson S. Spencer* for S. H. Kneeland, respondent. An unequivocal allegation that the notes are the notes of the plaintiff is necessary in order to sustain the position that the plaintiff has suffered or will suffer any injury, and is, therefore, essential to maintain any right of the plaintiff to any relief in this action against these defendants, either at law or in equity. (*Lord* v. *Cheeesebrough*, 4 Sandf. 696; *President, etc.,* v. *Gulick*, 8 How. Pr. 51; 1 Ed. on Neg. Inst. [3d ed.] § 98; 2 id. §§ 925, 929, 938; *Nickels* v. *A. R. S. Co.*, N. Y. Daily Reg., Feb. 26, 1884; *Boyce* v. *Brown*, 7 Barb. 80; *People* v. *Commissioners*, 54 N. Y. 276.)

Vann, J.. This is an action against the directors of a corporation for fraudulently issuing and negotiating promissory notes in its name, which, on reaching the hands of *bona fide* purchasers for value, became legal obligations against the company. The substantial question presented by the demurrer is, whether such an action can be maintained upon an allegation of liability to pay without an allegation either of payment or of actual loss. In an action for the conversion of a promissory note by wrongfully negotiating it to a *bona fide* holder for value, the maker need neither allege nor prove that he has paid it, but it is sufficient if he avers that he is legally liable to pay it. (*Decker* v. *Mathews*, 12 N. Y. 313.) The *gravamen* of such an action, as was held in the case cited, is the wrongful act of the defendant in causing a note without value, except to a *bona fide* holder, to become valuable by the sale thereof to such a purchaser as could enforce it against the plaintiff. It was also held in that case that a cause of action accrued to the maker as soon as he became liable upon the note through the transfer thereof, and that neither the right of action nor the measure of damages depended upon the fact of payment.

This case was relied upon by the court when it rendered judgment in *Farnham* v. *Benedict* (107 N. Y. 159), where the defendant, being in possession, without title, of certain town bonds that had been fraudulently issued through his procurement, and which were void in fact, although apparently valid, sold them to *bona fide* purchasers and thus rendered them valid and binding upon the town so that it was compelled to pay them. It was held that he was liable to the town for the amount of the bonds and Judge Rapallo, in speaking for the court, said that immediately on the negotiation of the bonds a cause of action accrued in favor of the town, either in the nature of an action of trover for the face of the bonds, or as for money had and received, for the money realized by him on the sale according to the rule laid down in *Comstock* v. *Hier* (73 N. Y. 269).

In *Thayer* v. *Manley* (73 N. Y. 305), the defendant, by means of false and fraudulent representations, induced the

plaintiff to execute and deliver to him three negotiable prom-
issory notes, but before any of them became due the plaintiff
demanded them from the defendant, who refused to deliver
them.   He still held the notes at the time of the trial, but one
of them had become due after the commencement of the action.
It was held that, as the defendant had it in his power, when
the suit was commenced, to dispose of the notes to a *bona fide*
holder, in whose hands they would have been valid and, as the
plaintiff was then entitled to recover the actual damage which
might accrue to him, this right was not impaired by the sub-
sequent maturity of one of the notes before a transfer; that
as the judgment and a satisfaction thereof would transfer title
to the notes to defendant, plaintiff was entitled to recover the
full value, but, that to avoid circuity of action a provision
should be incorporated in the judgment giving to defendant
the right to cancel and return the notes as a satisfaction of the
damages.   It was also held that the measure of damages in
such an action is the face of the note and interest, unless it
should appear that it was of less value by reason of payment of
the same, insolvency of the maker or some other lawful defense.

In *Betz* v. *Daily* (3 N. Y. S. R. 309), it was held that
in an action by a partner against his copartner and certain
third persons for fraudulently making notes in the name of
the firm and negotiating them so that *bona fide* holders could
compel the plaintiff to pay them, the cause of action was
completed when the wrong was done and that payment of the
notes was not essential to a recovery.   Some of the notes were
paid by the plaintiff after the commencement of the action
and before trial, but a verdict for the amount of all the notes
fraudulently negotiated was sustained.   The court said : " The
plaintiff was not injured to the amount of money which he
had paid out in taking up these fraudulent notes at the time
of beginning the action.   The injury to him was done when
the notes were first negotiated."

In *Town of Ontario* v. *Hill* (33 Hun, 250), the defend-
ants were held liable for wrongfully issuing the negotiable
bonds of a town, some of which had fallen into the hands of

innocent holders for value.   It was determined that the cause of action accrued immediately upon the passing of the bonds into the hands of *bona fide* purchasers who could enforce them against the town.   "In a legal sense," it was said, "the plaintiff had sustained damages by the action of the defendants when the bonds passed into the hands of persons who could enforce their payment against the town.   The plaintiff's alleged right of action springs out of the defendant's breach of duty as public officers, and is in the nature of an action on the case for consequential damages."   This case was subsequently reversed, but not on this point.   (99 N. Y. 324.)

While the case presented by this appeal may not be a strict action of conversion, it bears a close analogy to actions of that character when brought by the makers of negotiable promissory notes for the conversion thereof. What is the nature of the injury for which such an action lies?   It is not the loss of the material substance of the note, which is simply a small piece of paper with a few words written thereon.   Neither is it the loss of a contract, or of the evidence of a contract, that the maker could enforce, because it is his own engagement, in form, but not even that in fact.   The wrongful destruction of an article is ordinarily a conversion thereof, but the destruction of a note, that had had no inception, would not be a conversion as to the maker, unless it might be deemed a conversion of the material substance only, which is not now important.   The injury consists in the negotiation of the note, so that according to the law merchant it becomes a valid and enforceable contract against the maker, or, as in *Thayer* v. *Manley* (*supra*) in retaining possession after demand made so that the wrong doer had the power to put it into lawful circulation.   Wrongfully aiding in the negotiation of a note, or wrongfully making a note to be negotiated by others would appear to be injuries of the same character.

What was the nature of the tortious act of which the defendants by their demurrer admit they were guilty?   Those who voted for the resolution which in form authorized one of

their number to issue and negotiate notes of the plaintiff, assumed to authorize and, by authorizing, caused some of the notes in question to be issued and negotiated. They had no power, express or implied, to pass that resolution, or its predecessor which provided a salary for the president. They could not thus give away the property of the corporation. They could not bind the stockholders by voting to appropriate the assets of the company to an illegal purpose. (*Butts* v. *Wood*, 37 N. Y. 317; *Coleman* v. *S. A. R. R. Co.*, 38 id. 201; *Ogden* v. *Murray*, 39 id. 202; *Kelsey* v. *Sargent*, 40 Hun, 150; *M. F. G. R. Co.* v. *Branegan*, 40 Ind. 361; *Holder* v. *L. B. & M. R. Co.*, 71 Ill. 106; *Loan Association* v. *Stonemetz*, 29 Penn. St. 534; *Kilpatrick* v. *P. F. B. Co.*, 49 id. 118.)

Their action, as admitted on the record, was a violation of their duty as directors, a breach of trust and a fraud upon the plaintiff. The result of their action was to cause notes to be made, purporting to be valid obligations of the plaintiff, although in fact void. While not the notes of the company, they appeared to be such, as they were issued by those having apparent authority. If nothing further had been done, however, the wrong would doubtless have been *injuria absque damno*, but the defendants who adopted the second resolution thereby authorized the negotiation of the notes, and some of them were negotiated accordingly and reached the hands of *bona fide* holders for value. These notes, as is here admitted, the plaintiff has become liable to pay in consequence of the fraudulent conduct of those defendants. Thus the dead pieces of paper were, to this extent, given life and converted into contracts, binding upon the company without its consent. In what respect do these wrongful acts differ from those which, in the cases cited, were held to authorize an action for conversion, or an action in the nature of conversion? Do they differ in the character of the injury inflicted or loss sustained? Is there not in each the same presumption of damage springing from a liability wrongfully imposed? Were not all of these actions founded upon the fact that the maker, real or apparent,

of a negotiable instrument, had, through the wrongful acts of another, become chargeable, so that he could be compelled to pay such instrument, which would not have ripened into a valid obligation against him but for such wrongful act?

We think that the cases relating to this subject rest upon the principle that a person who fraudulently places in circulation the negotiable instrument of another, whether made by him or by his apparent authority, and thereby renders him liable to pay the same to a *bona fide* purchaser, is guilty of a tort, and, in the absence of special circumstances diminishing its value, is presumptively liable to the injured party for the face value thereof. As the case under consideration fairly comes within this principle, it should be governed by it. The essential injury, common to all cases of this character, is the fraudulent imposition of liability. Hence, there should be a common remedy, whether it is called an action in conversion, or in the nature of conversion, or a special action on the case. These views lead to a reversal of the judgment as to all of the defendants who voted for the resolution authorizing the president of the company to issue and negotiate its notes for the purpose of paying him a salary to which he was not entitled. The defendants Slayback and Duggin, who demur separately, but through the same attorneys and upon the same grounds as the other defendants, except Kneeland, did not vote for said resolution, although they voted for the resolution to pay the president a salary. This act, although wrongful, was harmless, so far as appears, until supplemented by further action in which they did not participate, and for which, upon the record as presented, they cannot be held responsible. The passage of the resolution for the payment of a salary, without specifying how it should be paid, did not bring the notes into existence nor put them into circulation. No cause of action was set forth, therefore, as to those defendants, who are not alleged to have had any connection with the act that resulted in making and negotiating the notes.

The judgment should be affirmed as to the defendants Slayback and Duggin, but under the circumstances without costs.

As to all the other defendants the judgment should be reversed and the demurrer overruled with costs, with leave to such defendants to withdraw their demurrer and serve an answer within thirty days upon payment of costs.

All concur, except POTTER, J., not sitting.

Ordered accordingly.