(173 App. Div. 726)

### REPUBLICAN ART PRINTERY, Inc., v. DAVID.

(Supreme Court, Appellate Division, Third Department.   June 30, 1916.)

1. CORPORATIONS ⬥⟿430—BILLS AND NOTES—CONSIDERATION.

Notes executed by a corporation, and given by the owner of practically all of its stock for the purchase price thereof to a third party, were without consideration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. ⬥⟿430.]

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CORPORATIONS ⬤➾430—AUTHORITY—VOID EXECUTION OF NOTES—STATUTE.
Under General Corporation Law (Consol. Laws, c. 23) § 10, providing that no corporation shall possess or exercise any corporate powers not given by law or not necessary to the exercise of the powers so given, the act of a corporation in executing its notes to pay the individual debt of the owner of practically all of its stock was void as forbidden, so that the company could cancel the notes and the mortgage securing them in the hands of the holder; the holder being obliged to inquire into the authority of the board of directors and to notice the limitations on their powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. ⬤➾430.]

3. CORPORATIONS ⬤➾298(2)—DIRECTORS' MEETING—SUFFICIENCY OF EVIDENCE.
In a corporation's suit to cancel notes and the chattel mortgage securing them, evidence *held* not to show that a legal meeting of the board of directors was held on the day on which the resolution authorizing the notes purported to have been passed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1294, 1295; Dec. Dig. ⬤➾298(2).]

4. BILLS AND NOTES ⬤➾345—BONA FIDE PURCHASER FOR VALUE.
Where the holder of notes of a corporation, given to pay the individual debt of the owner of practically all of its stock, was prompted by the situation when he purchased the notes to make inquiries to find out whether the notes were good, the corporation being without authority to execute them and the resolution authorizing their execution not having been passed by a legal directors' meeting, the facts appearing from the corporation's records, the holder was not a bona fide purchaser for value, but took the risk of the resolution of authorization having been duly adopted.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 849–852; Dec. Dig. ⬤➾345.]

Kellogg, P. J., dissenting.

Appeal from Trial Term, Columbia County.

Action by the Republican Art Printery, Incorporated, against Sarah L. F. David, executrix of the last will and testament of Charles F. David, deceased. From a judgment for plaintiff, defendant appeals. Judgment affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

William B. Daley, of Chatham, for appellant.

Ainsworth, Carlisle & Sullivan, of Albany (John N. Carlisle, of Albany, of counsel), for respondent.

WOODWARD, J.   The plaintiff is a corporation organized and doing business under the laws of the state of New York, and brings this action to set aside and cancel of record a certain chattel mortgage, with certain promissory notes, on the ground that such chattel mortgage and notes were the result of fraud practiced upon the plaintiff. The transaction out of which this controversy grows was substantially this:

One Arthur H. Larabee undertook to purchase substantially all of the stock of the plaintiff from James D. P. Wingate on or about the 11th day of September, 1914, paying partially for such property in

cash, and subsequently delivering to the said Wingate the promissory notes of the plaintiff for $4,000, secured by the chattel mortgage involved in this controversy, in final payment of the purchase price of the said stock. Larabee appears to have held a meeting of the stockholders of the corporation and to have adopted a resolution authorizing and directing the execution and delivery of the notes in question, together with the chattel mortgage. Later a third person, the defendant in this action, became the owner and holder of the said promissory notes and the chattel mortgage, and the plaintiff, a portion of whose stock is now owned by third persons, brings this action to set aside the notes remaining unpaid, and to be relieved from the chattel mortgage. The learned trial court has found the facts necessary to sustain the judgment in favor of the plaintiff, and the defendant appeals from the judgment.

[1, 2] There can be no question, of course, that there was no consideration for the notes moving to the corporation. They were given to pay the individual debt of Arthur H. Larabee, and the mere fact that he was the owner of practically all of the stock of the corporation did not authorize the corporation to assume his indebtedness. The corporation could not purchase itself, and it could not assume the obligation of paying for the property which was to vest in Arthur H. Larabee. This does not appear to be questioned seriously, but it is contended in behalf of the appellant that, the notes and the collateral having passed into the hands of a third person, the plaintiff has no right to the relief which has been granted. It is suggested, it is true, that the notes having been issued by authority of the corporation, and with the consent of all the stockholders, at the time they were issued, neither the stockholders nor the corporation are in a position to contest their validity, and Kent v. Quicksilver Mining Co., 78 N. Y. 159, and Skinner v. Smith, 134 N. Y. 240, 31 N. E. 911, are cited as authority for the proposition. That there are cases in which the courts will not interfere is undoubtedly true, but we fail to find any cases which recognize the right of an individual to make use of a corporation, owned by himself, to pay his individual debts. Indeed, such a disposition of the assets of the corporation is forbidden by statute. Section 10 of the General Corporation Law provides specifically that "no corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given," and we look in vain for any authority on the part of any corporation to use its money or credit in discharging the individual obligations of its stockholders. See section 29, Stock Corporation Law. An act forbidden by statute is void, and a void act is no act. Village of Ft. Edward v. Fish, 156 N. Y. 363, 374, 50 N. E. 973. Neither party was bound by the act. It was not void simply as ultra vires, but as a forbidden act. The defendant was obliged, at his peril, to inquire into the authority of the board of directors to make the resolution of authorization, and was bound to notice the limitations of their powers. Village of Ft. Edward v. Fish, supra, 156 N. Y. 371, 50 N. E. 973.

This distinction is clearly recognized in the case of Kent v. Quicksilver Mining Company, cited by the defendant. An act forbidden by

law is not merely ultra vires. It is void ab initio. Village of Ft. Edward v. Fish, supra, 156 N. Y. 373, 50 N. E. 973. It has, in law, no existence, and the defendant, in merely going to Chatham and ascertaining that a resolution in form had been adopted, did not place himself in the position of a bona fide holder of the notes for value. It was said in Wilson v. M. E. R. Co., 120 N. Y. 153, 24 N. E. 386, 17 Am. St. Rep. 625, that:

"If the plaintiff had relied upon a statement by one of the officers that a resolution had been passed authorizing the issue of the notes, he would have assumed, necessarily, the risk of the statement being true. If true, it would protect him. Otherwise not. He stands in no different position because he did not first inquire. In either event, he would assume only the risk of proving the authorization by resolution."

But this was said in relation to the facts as they appeared in that case, and not with reference to a resolution which was void in its very inception. In the Wilson Case, supra, one Kneeland had been the president of the company, and the board of directors had adopted a resolution to pay him a salary of $25,000 per year, dating back to the time of his original election, although no duties were attached to the office, and no salary had been provided at the time of his election (M. E. R. Co. v. Kneeland, 120 N. Y. 134, 135, 24 N. E. 381, 8 L. R. A. 253, 17 Am. St. Rep. 619), and subsequently a resolution was adopted that "the president be and he is authorized to use the credit of the company by issuing and negotiating its notes, or otherwise, for paying the salary of the said president" (M. E. R. Co. v. Kneeland, supra), and the court in Wilson v. M. E. R. Co., supra, say that:

"That resolution recited the existence of an indebtedness to the president for salary, and expressly authorized the issue of notes in the amount thereof 'to be signed by the president, and countersigned by the treasurer in the usual way and form.' It furnished information, therefore, that Kneeland was using the notes in the manner expressly authorized. It constituted an appearance of authority upon which a purchaser, for value, could safely rely. True, the resolution recited that the notes were to be issued to pay Kneeland, president, a salary; but it did not pretend to give or fix a salary. It asserted an indebtedness for salary, and one dealing with a railroad corporation, which has a right to pay its president a salary, and ordinarily does, is not bound to go behind such an assertion as was made by the defendant's directors, for the purpose of ascertaining whether the salary is legally payable. A different rule would be impracticable, and would substantially incapacitate third persons from taking the paper of, or contracting with, corporations."

This decision, and the others upon which the appellant relies, were made at a time when it was provided merely that:

"In addition to the powers herein enumerated, and those expressly given in the law under which it is or shall be incorporated, no corporation shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers so enumerated and given" (Laws of 1890, chapter 563, section 9)

—which obviously referred to implied powers, as shown by the subheading in the statute, and was not a positive inhibition upon the powers of corporations as at present found in the General Corporation Law (section 10).

[3, 4] Moreover, the meeting at which the resolution was adopted pretending to authorize this illegal disposition of the assets of the corporation (M. E. R. Co. v. Kneeland, supra, 120 N. Y. 143, 24 N. E. 381, 8 L. R. A. 253, 17 Am. St. Rep. 619) was not a meeting of the board of directors, but was declared to be "a joint special meeting of the stockholders and directors of the Republican Art Printery, Incorporated," and the records of this meeting show that there was "present Arthur H. Larabee, representing 148 shares of the capital stock in the company, and Henry J. Crance, representing 1 share of the stock of the company," while the third director was not present, and there is no evidence that she had any notice of this alleged joint special meeting of the stockholders and directors. It is true that the minutes in evidence assert that "Henry J. Crance presented a waiver of notice of the meeting, signed by all the directors and stockholders of the company, which on motion, duly seconded and carried, was ordered spread upon the minutes of the meeting"; but the evidence shows that the only waiver was for the meeting held at the office of the attorney on the 14th day of September, 1914, at 1:30 p. m., while the resolution of authorization was adopted at a meeting subsequently held at the same office at 2 p. m., and this alleged waiver was signed by James D. P. Wingate, who at the time of this later meeting was not a stockholder or director, or having any interest whatever in the corporation.

Section 34 of the General Corporation Law provides that "the affairs of every corporation shall be managed by its board of directors," and that "unless otherwise provided a majority of the board of directors of a corporation at a meeting duly assembled shall be necessary to constitute a quorum for the transaction of business and the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors"; but it is necessary that the meeting shall be duly—lawfully—assembled, and this requires that each director shall have notice of the meeting, or shall duly waive such notice. The waiver presented by the record, as we have seen, was not of the meeting held at 2 o'clock, but of the meeting held at 1:30 of the same day, and it was not until after the holding of the first meeting at 1:30 of September 14, 1914, that M. F. Larabee (the mother of Arthur H. Larabee) became a director. It likewise appears from the alleged waiver in evidence that the waiver was of notice to the stockholders, and not of the members of the board of directors, so that there is an entire absence of evidence to show that there was ever a legal meeting of the board of directors of the Republican Art Printery, Incorporated, and these facts would have appeared to any one making an examination of the records of the corporation.

The defendant admits a situation which prompted him to make inquiries. He traveled from Boston to Chatham to find out whether the notes were good, and he accepted the statement of Arthur H. Larabee, the president of the corporation, that the notes were valid; but he assumed the risk of the statement being true, and, the statement not being true, he is not protected. Wilson v. M. E. R. Co., 120 N. Y. 145, 153, 24 N. E. 384, 17 Am. St. Rep. 625. Not only did the

corporation have no right to pass the resolution giving away the property of the corporation to meet the individual obligations of the president (M. E. R. Co. v. Kneeland, 120 N. Y. 134, 143, 24 N. E. 381, 8 L. R. A. 253, 17 Am. St. Rep. 619), but the evidence fails to show that a legal meeting of the board of directors was held on the day on which the resolution purports to have been passed, and we are of the opinion that the defendant in this action is not a bona fide purchaser for value, and that he must be deemed to have taken the risk of the resolution of authorization having been duly adopted.

The judgment appealed from should be affirmed, with costs. All concur, except

JOHN M. KELLOGG, P. J. (dissenting). Wingate owned the entire stock of the Republican Art Printery, a corporation. He sold to Larabee "all that certain printing and publishing business, now conducted by me on Main street, Chatham, New York, and known as the Republican Art Printery, Incorporated, including the good will thereof, lease, if any, stock in trade, machines, fixtures, and appurtenances, job and advertising books, outstanding subscription accounts, and each and everything used by me therein," for $10,500, receiving $6,500 in cash. For the remaining $4,000 Larabee was to execute a chattel mortgage "for said amount upon all the business hereinbefore sold," etc. The contract also provided that Wingate was "to pay all accounts due from the said Republican Art Printery up to the date of said sale." This was more than a sale of the capital stock of the corporation; it was a sale of the printing and publishing business as conducted. The fact that Wingate was to pay all accounts against the business indicated clearly that it was the sale of the business, and not merely of the capital stock. The corporation, after Larabee took control of the business, executed the notes in question and a chattel mortgage to Wingate for the $4,000; the mortgage reciting that the Printery is indebted to him in that amount, "being for sufficient, good and valuable consideration." The judgment appealed from sets aside the notes and the mortgage given to secure them, upon the ground that they represent the individual debt of Larabee, and not the debt of the corporation, and are therefore void as to the corporation, although apparently Larabee owned all the stock at the time the notes were made, one share standing in the name of a relative who was financiering the enterprise for him. In various forms upon the trial the defendant sought to show that the notes and mortgage represented an indebtedness which the corporation owed to Wingate at the time the contract was made. The trial justice excluded this evidence, apparently upon the ground that it contradicted the terms of the written agreement and was immaterial. The defendant excepted. Clearly, if the corporation owed Wingate the $4,000 and Larabee purchased the printing and publishing business, that would, when consummated, extinguish the indebtedness from the corporation to Wingate, so far as Larabee was concerned, but would leave an obligation from the corporation to Larabee for paying Wingate. If by the sale Larabee caused the corporation to issue to Wingate notes and a mortgage for an amount which the corporation owed

Wingate, it has suffered no injury at their hands. It has simply changed its account liability to Wingate to notes and a mortgage liability, showing clearly that the notes and mortgage were given for a full and fair consideration. It did not contradict the instrument to show that the notes and mortgage executed by the corporation were in fact for the very indebtedness which the corporation was then owing to Wingate on account.

The ruling apparently overlooks the fact that Larabee was buying the business and not merely the stock of the corporation, and also overlooks the fact that by the agreement itself the debt which the corporation owed to Wingate would cease to exist upon the consummation of the transaction, except so far as it was represented by the mortgage and notes. Perhaps the agreement, strictly construed, contemplated a sale of all the assets and business to Larabee and that Larabee as an individual was to execute the mortgage, thus stripping the corporation of its practical existence. There is nothing in the written agreement or in the transaction tending to show that it was the intention of either party to relieve the printery business or corporation of the debt it owed to Wingate. In fact the terms of the instrument implied that the business was to remain indebted to Wingate in the sum of $4,000. There is no reason why Larabee should individually pay the debt which the corporation owed to Wingate, and we see no good reason why the notes and mortgage, the evidence of the corporation debt to Wingate, should be canceled, and the purchaser lose their value, and the corporation be relieved of the debt, in direct violation of the obvious intent of all the parties.

I therefore favor a reversal of the judgment, and a judgment dismissing the complaint, with costs.