## A. & M. ROBBINS, Inc., v. HILL et al.

(Supreme Court, Special Term, Kings County. June 20, 1913.)

1. CORPORATIONS (§ 316*)—OFFICERS—DIRECTORS.

   Where the directors of a corporation voted themselves unlawful, extravagant, improper, and fraudulent salaries, seeking to obtain an unfair advantage over their fellow stockholders, they may be compelled to account for the profits or moneys so taken.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401, 1402, 1404–1406, 1408, 1409, 1412–1414; Dec. Dig. § 316.*]

2. CORPORATIONS (§ 319*)—DIRECTORS—MISCONDUCT—ACTION.

   In an action against the directors and officers of a corporation to recover the amount of alleged fraudulent salaries granted one another through a conspiracy, evidence *held* insufficient to show that the directors were guilty of the offense charged.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1415, 1416–1425; Dec. Dig. § 319.*]

3. CORPORATIONS (§ 316*)—DIRECTORS—DUTIES.

   Directors of a corporation occupy a fiduciary relation, acting both for the corporation and all of the stockholders, and so they cannot deal with themselves for their own benefit, to the detriment of the corporation or the minority stockholders.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401, 1402, 1404–1406, 1408, 1409, 1412–1414; Dec. Dig. § 316.*]

Action by A. & M. Robbins, Incorporated, against John Hill and others. Judgment for defendants.

Phillips, Mahoney, & Wagner, of New York City, for plaintiff.
Robt. H. Elder, of New York City, for defendants.

MANNING, J. This action was commenced by the plaintiff company against all the defendants named herein, charging them with the commission of alleged illegal acts and practices while they were officers and directors of the corporation. The issues so far as the defendants Newton and Dunhill are concerned have already been disposed of in the trial recently had before Mr. Justice Putnam, and hence the present controversy affects only questions arising between the plaintiff corporation and the defendants Powell, Hill, and Roods. All the defendants were formerly connected with the company in the capacity of officers and directors.

The complaint alleges that prior to the time of holding a meeting of the board of directors on the 29th day of November, 1907, following a special meeting of the stockholders on the same day, the five defendants, namely, Powell, Hill, Dunhill, Newton, and Roods, "under

---

the guidance and direction of the defendants Stephen E. Powell, John Hill, and Joseph Newton, entered into a combination, agreement, and conspiracy to appropriate the funds and profits of said company to the use of the said Stephen E. Powell, John Hill, and Joseph Newton, and also to defraud the other stockholders of this corporation from receiving their just and lawful share of the net profits of this corporation." The so-called unlawful scheme whereby the persons named sought to enrich themselves at the expense of their fellow stockholders consisted in passing a resolution at the meeting of November 29, 1907, whereby certain increases of salary were made to those already receiving salaries, and voting an excessive and improper salary to one of the persons named, who before that date had not been in receipt of any salary at all. The particular allegations concerning the salary question are set forth in the complaint as follows:

"(14) That thereafter and in pursuance of said unlawful combination and conspiracy, and on or about November 29, 1907, at a meeting of the board of directors of the plaintiff corporation, at which the aforementioned directors Stephen E. Powell, John Hill, John Dunhill, and Chester H. Roods were present, Stephen E. Powell was elected president, Joseph Newton was elected vice president, and treasurer, and John Hill was elected secretary and general manager for the ensuing year. That at the said meeting of the board of directors on November 29, 1907, at which the said officers were elected as aforesaid, Stephen E. Powell, one of the defendants, was voted a salary of thirteen thousand five hundred ($13,500) dollars a year as president; Joseph Newton, one of the defendants, was voted a salary of six thousand ($6,000) dollars a year as treasurer, and John Hill, one of the defendants, was voted a salary of ten thousand five hundred ($10,500) dollars a year as secretary and general manager, the said salaries to begin December 1, 1907.

"(15) That prior to November 29, 1907, the president of the corporation was paid a yearly salary of nine thousand ($9,000) dollars and the treasurer was paid a yearly salary of five thousand ($5,000) dollars. Prior to said date the secretary received no salary, and the defendant John Hill had nominally held the office of general manager of the corporation since December 13, 1904, without compensation.

"(16) That by the said salaries voted by the board of directors at the said meeting held on November 29, 1907, the salary of Stephen E. Powell, as president, was increased by four thousand five hundred ($4,500) dollars; the salary of Joseph Newton, as vice president and treasurer, was increased by one thousand ($1,000) dollars, and the said John Hill, who had heretofore received no salary, was voted a salary of ten thousand five hundred ($10,500) dollars, making a total increase in salaries of sixteen thousand ($16,000) dollars, passed at the said meeting, which increases were more than ten (10%) per cent. of the par value of the capital stock of plaintiff corporation."

The complaint, which to say the least is very general in its nature, and apparently contains more conclusions than facts, also charges the defendant Hill especially, with many other alleged violations of duty while he was acting as the company's general manager, but to my mind they are not of sufficient importance to require any extended discussion.

[1] If these defendants committed the offense of looting the company by voting themselves unlawful, extravagant, improper, and fraudulent salaries, and thereby sought to get any unfair advantage over their fellow stockholders, and this is the main charge, then judgment should be pronounced against them, and they should be made to account for the profits or moneys so taken by them.

[2] The case received the most careful attention from the court during a protracted trial, at which the plaintiff was given every possible opportunity to substantiate the charges made, but in my opinion there was utter failure of proof on the part of the plaintiff to sustain the alleged charges, and the evidence seemingly resolves itself into an exhibition of excessive bad blood and intense ill feeling on the part of those who at present control the company as against the defendants, who formerly managed its affairs.

The company was organized in November, 1904, with a capital of $150,000, the original incorporators being Stephen E. Powell, Joseph Newton, William Gow, William S. Hurley, and Howard Maxwell, and those same persons were named as directors for the first year. Thereafter, on the 13th day of December, 1904, a meeting of the board of directors was held; Hurley, Powell, and Maxwell being present in person, and Gow and Newton being represented by proxy. At this meeting officers were elected, salaries were fixed, and the appointment of a general manager was decided upon. The man selected for this important place was the defendant Hill, who it appears possessed considerable practical knowledge of the business, and controlled certain lines of customers which the company was desirous of obtaining. He had been a very large buyer from the firm of A. & M. Robbins; and, when that firm decided to retire, the proposition was broached that Hill would be the best man to take over the concern, and carry on the business. It appeared from the evidence that Hill was agreeable to the proposition, but lacking the capital, and finding it impossible to finance the enterprise alone, he brought the matter to the attention of Maxwell, Gow, and Hurley, and as a result the necessary sum of $50,000 was procured, and the company was started. Not a dollar of the promoter's own money was invested, however, for as appears by the evidence it was the money of the Borough Bank of Brooklyn which was employed to make the purchase, the scheme being accomplished by the parties concerned making or indorsing a note to the bank and putting up the stock of the Robbins Company as collateral security. Subsequently the indebtedness to the Borough Bank was partially repaid from the dividends declared on the stock of the company, but a large part still remains unpaid, and the bank is now the holder of a number of shares of the company's stock out of which it may or may not realize something to repay the depositors of the bank whose money was thus, to put it mildly, questionably employed in the purchase of the chicken business of A. M. Robbins & Co. At the meeting last referred to the salary of Powell was fixed at $9,000 per year; that of Newton at $5,000 per year, while the other officers, Maxwell, the secretary, and Hill, as general manager, were given no salary. Maxwell by reason evidently of his connection with the Borough Bank, and in the case of Hill, the proof shows that he voluntarily offered to serve the company without pay for the first two years, or until the concern was firmly established, when he says it was understood proper compensation was to be arranged for him.

The company seemed to prosper from the start, and its ultimate success was reasonably assured. The active work was in charge of the defendants Powell and Newton, who with the regular staff of em-

ployés conducted the operations of the concern, while the whole was under the general supervision of the defendant Hill, whose main efforts and influence in no small measure contributed to the success of the enterprise. None of the other stockholders or officers appear to have in any manner given their time or means toward the company's affairs, and such success as appears to have been made is shown by the evidence to be attributed to the efforts of Hill, Powell, and Newton.

Immediately following the organization of the company, viz., from May, 1905, to and including the first half of the year 1907, the concern made money, and dividends were declared as follows:

    1905—13¾ per cent. or $20,625.
    1906—19      ”       or $28,500.
    1907—10      ”       or $15,000.

All this time the defendant Hill, though he worked hard for the company, never received one dollar as salary or compensation. And during all this same period not one of the other stockholders or persons interested uttered a word of criticism or complaint as to the conduct of the business, or the acts of those who were in active control of its affairs, and also during all this time a large majority of the stock was owned by Hurley, Hill, Gow, and those in control of the Borough Bank. Such was the situation at the time of the meeting of November 29, 1907, at which it is charged by the plaintiff that the defendants voted the increased unlawful salaries, and conspired to wreck and loot the company. At the meeting referred to, which appears to have been regularly called, the salary of Powell, the president, was increased from $9,000 to $14,500 per year; that of Newton, the treasurer, was increased from $5,000 to $6,000, and Hill, who had served the company for nothing since its organization, was voted a salary of $10,500, said increases in salaries to begin December 1, 1907. These salaries were paid for some two years after the same were voted, and then substantial reductions in all of their salaries were voluntarily agreed to by the recipients, when as they say it appeared to them that the condition of the company no longer warranted the payment of such increased salaries.

The defendants Powell and Newton justified the increase in their salaries, for the reason that they had been for many years in receipt of certain cash bonuses from Mr. R. bins, the prior owner, which the increases given would just about equalize. The defendant Hill justifies the salary voted to him on the ground that he had served the company faithfully for the three first years of its existence, and had received nothing in the way of compensation, that it was owing to his efforts in a large measure that the success of the company was due, and that, unless he was paid, he felt he could no longer give his time or efforts to the company's affairs. The evidence shows clearly that he had spent both his time and money for the company's benefit, and so in the light of the testimony in this case I cannot condemn the position he assumes, but, on the contrary, his whole course of conduct impresses me as being fair and just toward the company and those who profited by his hard work.

The complaint in this action is verified by William S. Hurley as president of the company, formerly a close personal friend of Hill, but who appears to have severed his friendship in the fall of 1911, when, as the proof shows, Hill refused to longer allow his name to be used as a medium of procuring credit for the company. Hurley, who was for a time vice president of the Borough Bank, says that his time was so employed about bank matters that he never knew of the increase in salaries complained of until September, 1911, when he assumed charge of the company, and also that he had absolutely no knowledge or information as to the several other acts or omissions which he accuses Hill of. On the other hand, Hill swears positively that Hurley knew about everything, that nothing was concealed from Hurley or any one else who had any right to know the company's affairs, and then makes the astonishing accusation that Hurley actually asked for and Hill agreed to divide his salary with him, the very salary he, Hurley, now says was unlawful, and the voting of which he swears as president resulted in the looting and wrecking of the company he now controls. Of course, Hurley denies the charge, but Hill is corroborated by an entry on the books showing that Hurley was to share in the salary, as to which no satisfactory explanation has been made, none that satisfies the conscience of the court sufficiently to cause it to disregard this as a very important and convincing circumstance. The defendant Hill is also charged with other derelictions of duty such as exchanging checks, and the sending of merchandise to the Clarendon Hotel indirectly through the plaintiff company, whereby he was saved express charges, and that the company performed services for him for which it received no return. The exchange of checks is admitted, but is explained by Hill, who says that the practice was one of long standing, and that the temporary exchange of checks was done for mutual accommodation, and that the company never lost a dollar by any check of his which was thus exchanged, and there is no proof that it did save, perhaps a few days interest, if Hill's check was not presented on time, but the company's books show that Hill did pay some amount of interest. The indirect forwarding of merchandise he explains was done for the direct benefit of the company, as the concern did not wish the outside world to know that he was making purchases of poultry from any other source than themselves.

In the main the foregoing embraces all the charges made by the plaintiff against Hill and the other two defendants herein impleaded. After a patient hearing of the whole case and a careful examination of the evidence, I am of the opinion that the prosecution of this action is not undertaken in good faith, and conclude that the plaintiff has not made out a cause of action against the defendants. The charge of conspiracy wholly fails. There is not a scintilla of evidence to support it. Neither is there any proof of unlawful or fraudulent acts or practices, nor does it anywhere appear by the evidence but what the salaries voted were fair, reasonable, and just, and were in proportion to the services rendered by those who performed the work for which the salaries were paid. The contrary does appear from all the evi-

dence in the case, and points to the conclusion that the salaries so voted were not excessive or improper, but were fair, just, and reasonable. There was no attempt here to exclude any minority stockholders from participating in the company's affairs. Everything was done openly and with no attempt at concealment. The increases were made in good faith, and the salaries were promptly reduced by these same directors who voted for the increase, when it was found, in the second year, that the business of the company did not warrant the payment of the salaries at the increased figure. This is conduct on the part of the directors which should receive approval, and not condemnation, when courts are called upon to pass upon their acts.

[3] The law affecting the duties and obligations of trustees and directors with respect to the rights of the corporation and its stockholders is fairly well settled and determined, and in brief the principle may be summed up as follows: Directors and trustees of a corporation act for the corporation and all its stockholders, they cannot deal with themselves for their own benefit to the detriment of the corporation or the minority of the stockholders. The relation is a fiduciary one, and a director must at all times act in good faith toward the corporation whose affairs are placed in his care.

I find in the present case that the defendants have in no way violated this principle by their conduct. The case is not at all analogous to the recent cases of Godley v. Crandal & Godley Co., 153 App. Div. 697, 139 N. Y. Supp. 236, or Carr v. Kimball, 153 App. Div. 825, 139 N. Y. Supp. 253. In the Godley Case the charge against the directors was: (1) That they had fraudulently paid out moneys to themselves and others under the guise of salaries; (2) that they had illegally paid themselves moneys under the guise of increased salaries; and (3) that they were guilty of fraudulently transferring practically to themselves the good will of the company's business. This was a very different state of facts; and yet, notwithstanding the conduct of the directors, the court allowed them what it deemed to be a fair compensation for services rendered upon the theory that the company could not expect them to work for nothing, and at the same time accept the fruit of their labors.

In the Carr v. Kimball Case there was evidence to sustain a finding by the court to the effect that Kimball had wrongfully and fraudulently formed the plan of depriving the plaintiff Carr of all connection with the company, and of obtaining complete control thereof, and voting himself a grossly excessive salary, and a much greater salary than he had previously drawn.

The case of Miller v. Crown Perfumery Co., 57 Misc. Rep. 383, 109 N. Y. Supp. 760, affirmed and modified in 125 App. Div. 881, 110 N. Y. Supp. 806, is easily distinguished from the present case. In that case the proof showed that the plaintiff and the two defendants were the original incorporators of the company, each holding one-third of the stock, and receiving equal shares of the dividends and profits. The parties disagreed, and two of them sought to deprive the other of equal participation in the profits, to which his holdings entitled him. They ousted him as an officer and director of the concern, and then pro-

ceeded as directors to vote the profits to themselves by way of salaries. The court rescinded their actions and thus protected the otherwise helpless minority stockholder.

Davids v. Davids, 135 App. Div. 206, 120 N. Y. Supp. 350, was a somewhat similar controversy. The capital stock in that case was only $30,000, and for several years prior to the resolution complained of the salaries had been extremely moderate. At one stroke they elected themselves officers and fixed their compensation at $8,000 each, and practically excluded the plaintiff, who held one-sixth of the stock, from any say in the management. The court properly intervened and prevented the wrongdoing.

Further citation and discussion of cases is deemed useless, for the reason that, while the underlying doctrine is almost elementary, still each case must of necessity be judged upon its own peculiar state of facts.

It may be said that these defendants advanced salaries when the company was not earning the money it did earn in previous years, and was obliged to borrow from banks and individuals in order to conduct its business. Conceding that this is true, at most all that can be said is that they made an error of judgment, but this is a long way from saying that they committed a crime. They may not have acted wisely, but they did not act dishonestly. The company has been losing money steadily ever since those in control of it now assumed office in 1911, but I do not think for this reason they would like to have the honesty of their management challenged. The whole controversy appears to me more in the light of a persecution than of a prosecution, and courts should not encourage such litigation.

Judgment is therefore rendered in favor of the defendants on the merits, with costs, and any injunctive orders or stays hereinbefore granted preventing any of the defendants from enforcing their claims against the plaintiff corporation are hereby dissolved.