ARCHIBALD PALMER, as Trustee in Bankruptcy of CYPRESS KNITTING MILLS, INC., Appellant, *v.* PAUL SCHEFTEL, Respondent.

First Department, May 17, 1918.

**Corporations — issuance of stock for service to be performed — compensation of directors and officers — directors have no authority to vote themselves compensation — ultra vires.**

Where the sole incorporators of a corporation agreed that stock should be issued to them as compensation for the performance of the usual and ordinary duties as officers of the corporation, and themselves approved of the issue as " fully paid and non-assessable," before the performance of any services, and there was no statute, charter or by-law authorizing them to be paid for serving as directors or officers, the agreement was invalid under section 55 of the Stock Corporation Law, and said incorporators may be held liable for the amount unpaid upon their subscriptions.

As a general rule, the directors and officers of corporations, such as president, vice-president, secretary, treasurer, etc., presumptively serve without compensation and are entitled to no remuneration for performing the usual and ordinary duties appertaining to the office in the absence of some express provision therefor by statute, charter or by-laws or by an agreement to that effect, and unless such provision or agreement was made or entered into before the services were rendered.

Directors acting as such at their meetings have no power to vote themselves salaries or compensation for their services, either before or after such services have been rendered.

While a corporation cannot avail itself of the defense of *ultra vires* when a contract has been in good faith fully performed by the other party and the corporation has had the benefit of the performance, this rule adopted

for the protection of the innocent, and based upon good faith, should not be extended so as to protect the corporation's directors upon contracts authorized by themselves under circumstances that establish not only illegality but such a breach of fiduciary obligations as amounts to bad faith.

LAUGHLIN, J., dissented.

APPEAL by the plaintiff, Archibald Palmer, as trustee, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of November, 1917, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Sidney J. Loeb* of counsel [*Harold R. Lhowe*, attorney] for the appellant.

*I. Balch Louis*, for the respondent.

SHEARN, J.:

The case of this bankrupt corporation presents in aggravated form the evil of permitting capital stock to be issued for "services." Notwithstanding the fact that the statute authorizes capital stock to be issued in consideration of labor actually performed for the benefit of the corporation, and despite the seeming liberality recently manifested in interpreting the statute (*Morgan* v. *Bon Bon Co.*, 222 N. Y. 22), this record exhibits such a palpable attempt to evade the statute as to merit condemnation if the facts can be fairly distinguished from those in the case referred to.

The case comes up on the review of a judgment dismissing the complaint, in an action brought by the trustee in bankruptcy of an insolvent corporation, upon an agreed statement of facts, against a subscriber to the certificate of incorporation, to recover an amount claimed to be due and unpaid upon the defendant's subscription. The defendant and two others organized the corporation on September 6, 1912, and were the sole incorporators. The defendant subscribed for seventy shares, Einsetler for seventy shares and Buehler for forty shares, each of the par value of $50, the authorized capital being $10,000. The corporation was organized and the subscriptions were made pursuant to a

prior agreement between the three subscribers, whereby, as affecting the defendant, it was agreed that in consideration of his paying to the corporation $200 in cash and transferring to it his interest in a certain knitting machine, of the value of $800, " and in further consideration of the defendant acting as president and director of said Cypress Knitting Mills, Inc., for a period of one year from and after its incorporation the defendant would be entitled to and would receive seventy shares of the capital stock of the said Cypress Knitting Mills, Inc., which said stock was to be full paid and non-assessable." Apparently the agreement contained a similar provision as to each of the other incorporators, for the resolution authorizing the issue of the stock to each refers to such an agreement. At the first meeting of the incorporators held September 14, 1912, a preamble and resolution was adopted reciting that the defendant " has offered to contribute to this corporation the sum of Two hundred dollars in cash, one-half interest in a Grosser Knitting Machine, which interest is of the fair and reasonable value of Eight hundred dollars, and has consented to act as president and director of this corporation for a period of one year, which said services in the opinion of the incorporators is [sic] of the fair and reasonable value of Twenty-five hundred dollars ;" that Einsetler " has offered to contribute to this corporation the sum of Twelve hundred dollars in cash and his one-half interest in said Grosser Knitting Machine, which is of the fair and reasonable value of Eight hundred dollars, and has consented to act as director and treasurer of this corporation for a period of one year, which said services are of the fair and reasonable value of Fifteen hundred dollars; " that Buehler " has offered to contribute the sum of Five hundred dollars in cash and his services as secretary and director for the term of one year, which said services are of the fair and reasonable value of Fifteen hundred dollars; " in accordance with which the board of directors was authorized to issue to the incorporators the full number of shares subscribed for by each " in consideration of his contributions as aforesaid if in the opinion of the Board of Directors said respective contributions are of the fair and reasonable value of the par value of the stock hereby authorized to be issued

to them respectively." On the same day the three incorporators, who also constituted the entire board of directors, resolved to accept the offers made by themselves, and adjudged and declared that the contributions referred to were of the fair and reasonable value stated in the resolution adopted by themselves as stockholders, that the same were necessary for the business of the company and authorized the issue of the shares as " full paid and non-assessable." Accordingly, on or about September 14, 1912, the cash contributions were paid to the corporation, the interest in the knitting machine was transferred to it, and the defendant was elected president and director and acted as such continuously for more than one year thereafter, and in consideration of the payment of $200 and the transfer of defendant's interest in the knitting machine " and in further consideration of the defendant's said agreement to act as president and director of said corporation for said period of time " (one year) the corporation issued to the defendant " seventy shares of its capital stock full paid and non-assessable."

The Stock Corporation Law (Consol. Laws, chap. 59 [Laws of 1909, chap. 61], § 55) provides: " No corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation." It was, therefore, a violation of law to issue to the defendant the seventy shares of stock before he had performed his alleged services. But it will be at once said, we are not concerned with the validity of the issue of the stock in this action, but are solely concerned with whether it has been paid for, the action being to recover the amount unpaid. It is plausibly argued that it would be illegal for a corporation to issue its stock for promissory notes, but if the notes were paid, such payment would constitute payment for the stock and discharge the subscription. Therefore, it is said, as the stipulated facts show that the services were rendered, it must be held that this stock was paid for. This argument might be difficult to meet had the defendant and his codirectors not violated another well-settled rule of law, which may be availed of to protect the creditors of this corporation.

The " services " rendered in this case, and claimed to

constitute part payment of the defendant's stock sub-scription, consisted in defendant's acting as a director and president of the corporation. The general rule is that directors and officers of corporations, such as president, vice-president, secretary, treasurer, etc., presumptively serve without compensation, and that they are entitled to no compensation for performing the usual and ordinary duties pertaining to the office, in the absence of some express pro-vision therefor by statute, charter or by-laws, or by an agreement to that effect, and unless such provision or agree-ment was made or entered into before the services were rendered. (Thomp. Corp. [2d ed.] §§ 1715, 1728.) No statute, charter or by-law authorized the defendant to be paid for serving as a director or officer. There was an agreement but the agreement was invalid. The only authority for the agreement was a resolution adopted solely by the votes of the directors who were the direct beneficiaries, and who not only fixed their own compensation but determined the value to the corporation of their contemplated services, and who decided that the duties, which are presumptively rendered without compensation, were in their own case worth several thousand dollars. It is almost universally held that directors, acting as such at their meetings, have no power to vote themselves salaries or compensation for their services, either before or after such services have been rendered. (Thomp. Corp. [2d ed.] § 1720; *Copeland* v. *Johnson Manufacturing Co.*, 47 Hun, 235; *Butts* v. *Wood*, 37 N. Y. 317; *Miller* v. *Crown Perfumery Co.*, 57 Misc. Rep. 383; affd., 125 App. Div. 881; *Carr* v. *Kimball*, 153 id. 825; affd., 215 N. Y. 634.) While it has been said that corporate agreements made on the authority of resolutions adopted by the vote of directors who are the beneficiaries are voidable at the instance of the corporation, the agreement with which we are dealing was void. It was void because it not only contemplated but actually provided that something should be done which is prohibited by law, namely, the issuing of stock for services before any services were rendered. The agreement was, therefore, not only voidable but, being unlawful, was void and affords no legal basis for treating the defendant's per-

formance of his duties as director and president of the corporation as payment for his stock subscription. If the court sanctioned such practices as are here disclosed, there would be little security in dealing with corporations. Not only would creditors suffer, but grave injury would be done to corporations that are lawfully and properly conducted.

There is nothing necessarily to the contrary in *Morgan* v. *Bon Bon Co.* (*supra*), where the facts were quite different. It is true that in that case the court upheld the payment for stock by the rendition of services pursuant to an agreement made prior to the rendition of the services, but, as pointed out by Chief Judge HISCOCK: "There was no claim by the appellant to any stock or payment until after his services had been completed," whereas here the stock was issued upon the mere promise to render services. In the *Morgan* case the services rendered were of a *bona fide* character, for the person to whom the stock was issued was an accountant who was employed to and did lay out and put into operation a system of bookkeeping for the corporation, which may have been well worth to the corporation and doubtless would have cost $2,500, which was the par value of the stock issued in payment. Here, as above pointed out, the services were merely the ordinary duties of a director and officer, presumptively rendered without compensation. In the *Morgan* case the person who received the stock and rendered the services was a stranger to the corporation and had no part in the adoption of the resolution authorizing the agreement, whereas here the defendant violated his fiduciary obligation to the corporation of which he was a director by voting himself compensation and passing upon the value of his own services to the corporation. I do not believe that the Court of Appeals intended even by implication to sanction the legality of any such transaction as herein presented.

It is contended that this action cannot be maintained by the trustee in bankruptcy because he sues in the right of the corporation and that the corporation, having received the supposed benefit of defendant's services, rendered pursuant to an agreement with it, would be estopped from denying that the services constituted payment of the defendant's stock subscription. This point is not well taken, for the

agreement was void. While a corporation cannot avail itself of the defense of *ultra vires*, when the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance, this rule, adopted for the protection of the innocent and based upon good faith, should not be extended so as to protect the corporation's directors upon contracts authorized by themselves under circumstances that establish not only illegality but such a breach of fiduciary obligations as amounts to bad faith.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., SMITH and PAGE, JJ., concurred; LAUGHLIN, J., dissented upon *Morgan* v. *Bon Bon Co.* (222 N. Y. 22).

Judgment reversed, new trial ordered, costs to appellant to abide event.