ARCHIBALD PALMER, as Trustee in Bankruptcy of CYPRESS KNITTING MILLS, INC., Appellant, *v.* PAUL SCHEFTEL, Appellant.

ARCHIBALD PALMER, as Trustee in Bankruptcy of CYPRESS KNITTING MILLS, INC., Appellant, *v.* ALPHONSE BUEHLER, Respondent.

ARCHIBALD PALMER, as Trustee in Bankruptcy of CYPRESS KNITTING MILLS, INC., Appellant, *v.* GEORGE A. EINSETLER, Respondent.

First Department, January 14, 1921.

**Bankruptcy — liabilities of stockholders of bankrupt corporation for unpaid stock subscriptions — stock issued in part for cash and part for services to be thereafter rendered — effect on stockholders' liability of transfer of stock back to corporation — stockholders entitled to credit for amount received on resale of stock transferred back to corporation less amount paid by it as damages for false representations by said stockholders on sale of stock — transfer of stock issued as full-paid to innocent purchaser before demand made for balance due thereon no defense.**

Stock of the bankrupt corporation was issued as fully paid to the defendants in consideration of part payment in cash and property and an allowance for prospective services to be rendered to the corporation. In an action by the trustee in bankruptcy of the corporation to recover the balance unpaid on the stock, *held*, that when the defendants subscribed for the stock and failed to pay the par value thereof, there arose a contractual liability on their part to pay the balance, which was enforcible at law by the corporation or its legal representatives and which inured to the benefit of its creditors.

Where stock, as in the instant case, purports to have been fully paid, but by reason of an improper allowance of credit for work, labor and services not performed at the time of the subscription it is not fully paid, the stockholder owes to the corporation, as a debt, the difference between the amount lawfully paid and the par value of the stock.

The defendants could not escape their liability to the corporation by a transfer of the stock back to the corporation.

To the extent, however, that the stock issued to the defendants and transferred by them back to the corporation was subsequently issued to others who paid for the same in full, the defendants are entitled to credit.

But the credit to which the defendants would otherwise have been entitled for the stock thus reissued must be reduced by the amount that the corporation paid to a new stockholder as damages for false and fraudulent representations made by the defendants in the sale of the stock to her.

The transfer by the defendants of their remaining shares of stock to an innocent third person before any demand was made upon them for payment of the balance due is not a defense to the action.

APPEAL in each of the above-entitled actions by the plaintiff, Archibald Palmer, as trustee, from a judgment of the Supreme Court in favor of the defendants therein, entered in the office of the clerk of the county of New York on the 7th day of April, 1919, upon the verdict of a jury, and also from orders entered in each of the above-entitled actions in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*Sidney J. Loeb* of counsel [*Harold R. Lhowe*, attorney], for the appellant.

*I. Balch Louis* of counsel [*C. Bertram Plante* with him on the brief], for the respondents.

PAGE, J.:

The three actions were tried as one. They were brought by the trustee in bankruptcy of the Cypress Knitting Mills, Inc., to recover from each defendant the unpaid portion of his subscription to the capital stock of the corporation. The amount claimed to be due in each case represented the par value of the stock issued for services to be thereafter rendered to the corporation. On a previous trial the court dismissed the complaint at the close of the plaintiff's case. On appeal we reversed the judgments and directed a new trial. (*Palmer* v. *Scheftel*, 183 App. Div. 77; *Palmer* v. *Buehler*, 186 id. 939; *Palmer* v. *Einsetler*, 187 id. 890.) The plaintiff on this trial proved the same facts as on the former trial and rested. The defendants presented substantially three defenses: *First.* A partial defense, that they returned a part of the stock issued to them to the corporation. *Second.* That sixty-six other shares of their stock were sold to a Mrs. Comings and the company was paid therefor $3,300. *Third.* That each defendant subsequently turned over the remainder of his stock to one Rubinstein and was not the owner thereof at the time of the bankruptcy. The facts are somewhat involved; hence, in order to get a clear understanding, it will be necessary to repeat some of the facts discussed in the former appeal.

The three defendants organized the corporation in September, 1912, with an authorized capital stock of $10,000, repsented by two hundred shares of the par value of $50 each. Scheftel subscribed for and received seventy shares, paying $200 in cash, transferring his rights in a knitting machine valued at $800, and receiving credit for the remainder of the subscription price as an allowance for services to be rendered thereafter to the corporation as president and director. Buehler subscribed for and received forty shares, paying $500 in cash and receiving credit for the remainder as an allowance for prospective services as secretary and director of the corporation. Einsetler subscribed for and received seventy shares, paying $1,200 in cash, transferring his rights in a knitting machine valued at $800, and receiving credit for the remainder as an allowance for prospective services to be rendered to the corporation as treasurer and director. Thus the corporation issued one hundred and eighty shares of stock of a par value of $9,000, and received therefor $1,900 in cash and $1,600 in rights to a knitting machine, a total of $3,500. Under the former decision of this court, the defendant Scheftel was chargeable with $2,500, Buehler with $1,500, and Einsetler with $1,500, which they had been improperly allowed for services. In partial satisfaction of this liability, on November 16, 1912, the defendants sold to Mrs. Comings sixty-six shares of stock of the corporation; Scheftel contributed twenty-four shares, Buehler eighteen shares, and Einsetler twenty-four; and Mrs. Comings gave to the corporation $1,000 in cash and machinery and other property of the value of $2,300, making a total of $3,300. Subsequently Mrs. Comings brought an action against the corporation and these defendants for damages for false and fraudulent representations made by these defendants in the sale of the stock to her, and was paid not less than $1,500 in settlement of the action on February 27, 1914.

On the same day that defendants transferred parts of their holdings to Mrs. Comings, and pursuant to the same agreement, they transferred to the corporation other parts, as follows: Scheftel, twenty-two shares; Buehler, seventeen shares, and Einsetler, nineteen shares; a total of fifty-eight shares. In February, 1913, one Strathmeyer purchased the twenty shares of unissued stock of the corporation, and in

March ten shares more, for which he paid par value of fifty dollars a share. The ten shares must have been issued from the stock turned back by the defendants to the corporation.

In February, 1914, negotiations were in progress between the corporation and one Rubinstein looking to the latter's buying the assets of the corporation and assuming its liabilities. At this time Mr. Comings had obtained a judgment against the corporation for wrongful discharge from employment, and an appeal was pending, and Mrs. Comings was suing for damages for false representations in the sale of the stock to her. On February 26, 1914, the factory was destroyed by fire. It was insured for $9,000. Thereupon the negotiations were resumed and as a result the defendants transferred all their stock to Rubinstein, who was elected president and proceeded to liquidate the corporation. Scheftel transferred twenty-four shares; Buehler, fifteen; Einsetler, twenty-seven, and Strathmeyer, thirty. The defendants admit that their main purpose in making the transfer was to relieve themselves from personal liability to Mrs. Comings, while Rubinstein was speculating upon the outcome of the suits by Mr. and Mrs. Comings. If the Comings lost, he would get a bargain; if he had to pay the judgment, he considered he had paid all the assets were worth.

When the defendants subscribed for the stock and failed to pay the par value thereof, there arose a contractual liability on their part to pay the balance, which was enforcible at law by the corporation or its legal representatives (*Stoddard* v. *Lum*, 159 N. Y. 265, 275) and which inured to the benefit of its creditors. (*Stevens* v. *Episcopal Church History Co.*, 140 App. Div. 570, 582.) The capital of a corporation is a trust fund for the benefit of its creditors, upon the faith and credit of which others extend credit to the corporation. Where stock, as in the instant case, purports to have been fully paid, but by reason of an improper allowance of credit for work, labor and services not performed upon the subscription it is not fully paid, the stockholder owes to the corporation as a debt the difference between the amount lawfully paid and the par value of the stock. The defendants could not escape this liability by a transfer of the stock back to the corporation; *first*, because there was no agreement on the part of the cor-

poration to release them from their liability on the subscription; *second*, there was no consideration for it, and, *third*, it would be in fraud of creditors.

To the extent, however, that this stock was subsequently issued to others who paid for the same in full, the defendants are entitled to credit. By its act in reissuing the stock the corporation ratified to that extent the surrender, and the par value having been paid to the corporation, its capital to that extent was made intact and the fund created for the benefit of creditors restored. This would apply to sixty-six shares issued to Mrs. Comings and ten shares issued to Strathmeyer. By reason, however, of the false representations of the defendants in the sale of the stock to Mrs. Comings, the corporation paid, or they caused to be paid, out of its assets $1,500. Their credit should be reduced by this amount, for the transaction netted the corporation only $1,800. The result would be as follows:

Scheftel, amount claimed............................. $2,500 00
 Credit on sale to Mrs. Comings, four-
  elevenths of $1,800, or............ $654 55
 and twenty-two fifty-eighths of $500
  received from Strathmeyer, or..... 189 65
              ——————— 844 20

 Leaving amount still due..................... $1,655 80

Buehler, amount claimed....................... $1,500 00
 Credit, three-elevenths of $1,800, or.. $490 91
 and seventeen fifty-eighths of $500,
  or............................. 146 55
              ——————— 637 46

 Leaving amount still due..................... $862 54

Einsetler, amount claimed....................... $1,500 00
 Credit, four-elevenths of $1,800, or.. $654 55
 and nineteen fifty-eighths of $500, or 163 79
              ——————— 818 34

 Leaving amount still due..................... $681 66

The defendants further claim that, inasmuch as they transferred all of the remaining stock to Rubinstein before any demand was made upon them for payment, they cannot be held. The cases cited by counsel to sustain this proposition arise out of subscriptions to stock which was issued as part-paid stock, remainder of subscription subject to the call of the directors. The stock in the present case was issued as full-paid stock. It was transferred to Rubinstein as such. There was no evidence that he had any knowledge of the fact that the stock was not what it purported to be. There was no agreement on his part, nor can any agreement be implied, to pay the deficiency in the subscription. Therefore, their transfer of the stock to Rubinstein affords no defense to these actions.

In calculating the amount of stock issued to each, we find Buehler originally received forty shares. Yet he is credited with having returned and transferred to Mrs. Comings and to Rubinstein in all fifty shares. There is testimony that at some time subsequent to the original issue he obtained five shares, for which he paid $250. As it was testified that the remaining twenty shares of the original stock were issued to Strathmeyer, Buehler must have had reissued to himself ten of the shares which he had surrendered, for which he paid only $250. The evidence is not clear, and this situation was not discussed in the briefs of either counsel. It would appear that the plaintiff is entitled to recover from Buehler $1,112.54, instead of $862.54, as above stated. If counsel can stipulate the facts, judgment can be entered in the Buehler action; otherwise, there will have to be a new trial in that action.

The judgments should be reversed, with costs, and judgment granted for the plaintiff in the action against Paul Scheftel for $1,655.80, with costs; and judgment granted for plaintiff in the action against George A. Einsetler for $681.66, with costs.

Settle orders on notice, when the Buehler case will be disposed of, and the question of the allowance of interest, which was not demanded in the complaints, may be settled.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

In the Scheftel case: Judgment reversed, with costs, and judgment ordered for plaintiff in the sum of $1,655.80, with costs. Settle order on notice.

In the Buehler case: Judgment reversed and new trial ordered, with costs to appellant to abide event, unless counsel stipulate as suggested in opinion; in which event judgment ordered for plaintiff for $1,112.54, with costs. Settle order on notice.

In the Einsetler case: Judgment reversed, with costs, and judgment ordered for plaintiff for $681.66, with costs. Settle order on notice.